CHARLES W. HENDERSON, *Appellant*, v. THE UNITED
STATES GYPSUM COMPANY *et al.*, *Appellees:*

No. 16,914.

### SYLLABUS BY THE COURT.

MASTER AND SERVANT—*Injury to Employee—Assumption of
Risk—Contributory Negligence.* In an action for personal
injuries the plaintiff's evidence showed these facts: He was
an employee of a gypsum mining company, whose experience
enabled him to tell when the roof of an excavation was unsafe,
but whose general employment at the time did not contemplate
work inside the mine; on the request of another employee he
tested the roof of the room in which the latter was working,
and found a part of it loose and a part of it sound; he re-
ported this condition to the superintendent, at whose direc-
tion he undertook, about an hour later, to remove the loose
portion; in the meantime, in the course of the usual mining
operation in an adjoining room, a shot had been fired which
had loosened that part of the roof which had previously been
sound; without making any further test he began the removal
of the part he had already found to be loose, when the entire
roof fell in, causing the injury on account of which the action
was brought. *Held:* (1) The plaintiff must be regarded as
having voluntarily assumed for the time being the duties of
an inspector. (2) The ordinary rule regarding the duty of
an employer with respect to providing a safe place in which
to work does not apply because the plaintiff was engaged in
attempting to make a dangerous place safe. (3) The plain-
tiff's omission to test anew the soundness of the roof before
beginning work upon it constituted such negligence on his own
part as to bar a recovery.

Appeal from Marshall district court. Opinion filed
March 11, 1911. Affirmed.

*W. W. Redmond,* for the appellant; *W. J. Gregg,* of
counsel.

*Angevine, Cubbison & Holt,* for the appellees.

The opinion of the court was delivered by

MASON, J.: Charles W. Henderson brought action
against the United States Gypsum Company and J. E.
Drake on account of an injury he had received by the

falling of a roof in a gypsum mine. A demurrer to his evidence was sustained, and he appeals. The evidence, so far as it affects the correctness of this ruling, was substantially to this effect: The plaintiff was employed as "an outside switchman and repair man"; his duties were to switch the cars as they came from the mine, and assist in unloading rock at the mill, or keep the cars emptied, and do repair work at the blacksmith shop. He had worked in and about mines for twelve years, largely in gypsum mines, mining gypsum. For about ten years he had worked in the gypsum mines of that locality, and was familiar with the rock strata and methods of work. Tunnels were driven through the rock, on each side of which excavations were made forming separate rooms. The miners in blasting fired shots at irregular intervals, each using his own discretion. The vibration caused by the shots anywhere in the mine tended to weaken the support of the roof—to shake the roof from its hold on the upper strata of rock. There was always danger in the mine, principally from the falling of the roof or from shots breaking through the walls. On the day of the accident a miner named Beasley asked Henderson to come and look at the roof of the room in which he (Beasley) was at work mining. Henderson did so, and discovered that from the farther end of the room to about the middle the roof was loose, while the other portion was solid. His test was made by the usual method of tapping the roof with a sledge hammer, the sound enabling him to tell its condition as to being safe or otherwise. He then went to the superintendent and reported the condition he had found. The superintendent directed him to see if Beasley would take down the loose part of the roof, adding: "If he won't take it down, I guess you will have to, for I need the rock from that room." Henderson returned to the room, having been away about an hour. Beasley refused to take the roof down, and

22—84 KAN.

Henderson undertook the task. Standing with one foot upon a car which was under the portion of the roof which he had found to be safe, and with the other upon a lump of gypsum, he started a steel wedge at the edge of the insecure part and began driving it with a sledge. He had struck about a dozen blows when the entire roof of the room fell and he received the injury upon which his action was based. Between the time he left the room and his return to it a shot had been exploded in an adjoining room, and the contention of the plaintiff is that this had loosened the part of the roof that his previous test had shown to be sound. The defendants are alleged to have been negligent in failing to provide the plaintiff a safe place in which to work, in rendering unsafe the place in which he was directed to work, and in permitting the shot to be fired by which the roof was loosened, without advising him of it.

We think the district court decided correctly. Notwithstanding the plaintiff's original employment did not contemplate the services he performed in testing the roof and attempting to remove the unsafe portion, the evidence shows that in responding to the request of Beasley to examine the roof of the room in which the accident occurred, in reporting the condition he found, and in acting upon the superintendent's direction that he should take down the insecure roof if Beasley was unwilling to undertake it, he voluntarily assumed for the time being what were in effect the duties of an inspector. If he had been taken from his regular work and placed at a task with which he was unfamiliar an entirely different situation would be presented. He was shown to be a miner of long experience, fully competent to decide when a roof was unsafe, and to apply the remedy. The ordinary rule as to the employer's obligation with respect to furnishing a safe place in which to work does not apply when the employee is engaged in making a dangerous place safe (25 L. R. A., n. s., 321,

Wichman v. Railway Co.

note), and that was the character of the occupation in the course of which the plaintiff was injured. The negligence relied on in respect to the shot discharged during the plaintiff's absence is the defendants' failure to advise the plaintiff of its having been fired, or to provide a general method by which he would have been advised of it. The superintendent is not shown to have had knowledge of the firing of this particular shot, but he of course knew that one might be fired while the plaintiff was with him. But the plaintiff as well must have known of this possibility, and our conclusion is that he himself, in view of his experience and the work he had undertaken, must be deemed to have been negligent in not again testing the roof under which he stood before beginning the operation of dislodging the part which he had previously found to be loose. This view precludes his recovery, even if there was evidence sufficient to sustain a finding of negligence on the part of the defendant.

The judgment is therefore affirmed.